UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JASON MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:24-cv-473-TAV-JEM |
| | ) | |
| FOOTHILLS BROKERAGE, INC, | ) | |
| MARY RAE CAWOOD, and | ) | |
| DAVID TRINITY CAWOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendants' motions to dismiss [Docs. 9, 13].

Plaintiff has responded [Doc. 18] and defendants have replied [Doc. 20].[1]  This matter is

now ripe for the Court's review.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons explained

below, defendants' motions to dismiss [Docs. 9, 13] will be **DENIED**.

## I.     Background

The second amended complaint[2] alleges that, on August 1, 2023, Foothills

Brokerage, Inc. ("Foothills") entered into an employment contract with plaintiff that was

---

[1] The parties are reminded of their obligation to familiarize themselves with the Court's
Local Rules and Electronic Case Filing Rules and Procedures ("ECF Rules").  Specifically, Rule
4.1.2 of the Court's ECF Rules directs that "[b]riefs and motions must be filed in PDF text format
and *not created by scanning*."  (emphasis added).  This rule allows the Court to perform a text
search of the filing, which enables more efficient and expedient review.

[2] Defendants filed their first motion to dismiss [Doc. 9], and plaintiff subsequently filed
the first amended complaint [Doc. 12].  Defendants then filed their second motion to dismiss [Doc.
13].  United States Magistrate Judge Jill E. McCook subsequently granted plaintiff leave to file a
second amended complaint, with the stipulation that the Court will apply the pending motion to
dismiss [Doc. 13] to the second amended complaint [Doc. 22].  Accordingly, the Court now
addresses defendants' arguments in their motions to dismiss to the extent they are applicable to

signed by Mary Rae Cawood and David Trinity Cawood as President and Vice President of Foothills, respectively [Doc. 23 ¶ 13]. Plaintiff was employed by Foothills as the President of Brokerage Operations from September 1, 2023, to September 12, 2024 [*Id*. ¶¶ 14–15]. Plaintiff asserts that "[d]espite conflicting characterizations in the Contract," he was engaged as an at-will employee of Foothills [*Id*. ¶ 17].

Pursuant to Sections 4 and 5 of the contract, plaintiff was to receive an annual salary of $135,000, in addition to commission payments "based on 25% of Brokerage Net Profit as defined by Gross Pay less Carrier Pay (Brokerage COGS)" [*Id*. ¶ 18]. Such commission payments were to be paid based on monthly performance no later than 60 days after the end of each calendar month [*Id*.]. Additionally, under Section 6 of the contract, Foothills agreed to reimburse plaintiff for out-of-pocket expenses incurred on behalf of Foothills [*Id*. ¶ 19].

However, despite plaintiff having an "Employment Contract" with Foothills, and being a Foothills employee, the Cawoods required plaintiff to be paid via an IRS Form 1099-MISC ("Form 1099"), which was stated in the contract [*Id*. ¶ 20]. Because the Cawoods refused to pay plaintiff through a W-2, plaintiff and the Cawoods agreed that, while plaintiff would provide services individually, payment under the contract would be

---

the second amended complaint.

Additionally, the Court notes that defendants' motions to dismiss and briefs in support are largely identical, with some modifications in light of the filing of the first amended complaint [*See* Docs. 9, 10, 13, 14]. Accordingly, for clarity of the record, the Court will simply refer to the most recently filed motion to dismiss and brief in support throughout this memorandum opinion and order [*See* Docs. 13, 14].

2

made to MMC Knoxville, Inc. ("MMC Knoxville") a Tennessee corporation organized and formed by plaintiff for the sole purpose of serving as a pass-through entity to manage his payroll tax obligations [*Id*. ¶ 22]. According to plaintiff, the contract explicitly acknowledges that wages are earned by, and services performed by, plaintiff, not MMC Knoxville [*Id*. ¶ 23].

Under this arrangement, Foothills would pay plaintiff's salary, commission payments, and reimbursements to MMC Knoxville [*Id*. ¶ 24]. MMC Knoxville would then run payroll out of the 1099 payments from Foothills, withholding payroll taxes before paying plaintiff personally [*Id*.]. Foothills paid plaintiff, through MMC Knoxville, via 1099 Form from September 1, 2023, through February 29, 2024 [*Id*. ¶ 25].

In or around late 2023, however, plaintiff raised the issue of Foothills' payment of employees as independent contractors with the Cawoods and Foothills' legal and financial advisors [*Id*. ¶ 26]. In or around December 2023 or January 2024, plaintiff, at the Cawoods' direction, contacted ADP[3] regarding potential outsourcing of Foothills' payroll [*Id*. ¶ 27]. Foothills transferred its payroll to ADP on March 1, 2024, and, at that time, all Foothills employees, excluding drivers, were switched to payments via W-2s [*Id*. ¶ 28]. In connection with this switch, Foothills began paying plaintiff directly in his individual capacity on March 1, 2024, and plaintiff and Foothills continued to operate under the contract as if any references to MMC Knoxville were removed [*Id*. ¶ 29].

---

[3] The second amended complaint contains no further explanation of who or what "ADP" refers to [*See* Doc. 23].

Based on his position and salary, plaintiff was initially classified as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA") [*Id*. ¶ 30]. From September 1, 2023, through August 15, 2024, Foothills paid plaintiff's salary but never paid plaintiff any contractually agreed upon commission payments or out-of-pocket expenses [*Id*. ¶ 31].

Beginning August 16, 2024, Foothills and plaintiff jointly decided to postpone plaintiff's salary payment due to Foothills' financial constraints, which, according to plaintiff, resulted in the loss of his exempt status [*Id*. ¶ 32]. Plaintiff received no payment for his services from August 16, 2024, through September 12, 2024, the date Foothills terminated his employment [*Id*.]. During that period, he worked approximately 100 hours per pay period (or 50 hours per week), although he cannot provide an exact number of hours worked because the documentation necessary to verify such is in defendants' sole possession [*Id*. ¶ 33]. Nonetheless, plaintiff alleges that he regularly worked in office from 7:30 a.m. through 5:30 p.m. and rarely took a lunch break, which, alone equates to well over 40 hours per week [*Id*.]. Additionally, prior to going into the office in the mornings, plaintiff would work from home, responding to emails and drafting new processes and procedures without interruption [*Id*.]. Plaintiff worked additional remote hours each day after going home in the evening, sending emails to both external parties and Foothills employees [*Id*.]. Moreover, plaintiff worked remotely on weekends [*Id*.].

Plaintiff alleges that, despite the loss of exempt status, Foothills failed to compensate him for the overtime hours he worked in excess of 40 hours per week from

4

August 16, 2024, through September 12, 2024 [*Id.* ¶ 34]. Additionally, under the terms of the contract, upon termination, plaintiff was entitled to payments for periods that occurred prior to the date of termination for which he had not been paid, and for any unpaid commission earned in accordance with the contract [*Id.* ¶ 35]. But, as of the filing of the second amended complaint, plaintiff had not received any pay for August 16, 2024, through September 12, 2024, or any commission payments for September 2, 2023, through September 12, 2024 [*Id.* ¶ 36].

Moreover, Section 11 of the contract provides that, if Foothills terminated the contract prior to August 31, 2025, plaintiff is entitled to an amount equal to $270,000 less any payments made by Foothills to plaintiff during his employment (the "payout"), which was due on the termination date [*Id.* ¶ 37]. The total compensation paid to plaintiff from September 1, 2023, through September 12, 2024, was $129,807.67 [*Id.* ¶ 38]. Therefore, upon termination, he was due a payout in the amount of $140,192.32, but Foothills failed to pay this to plaintiff [*Id.*].

In total, plaintiff has not yet received (1) any pay from August 16, 2024, through September 12, 2024; (2) any commission payments from September 1, 2023, through September 12, 2024; (3) full expense reimbursement for September 1, 2023, through September 12, 2024; or (4) the payout [*Id.* ¶ 40].

Plaintiff brings this action for breach of contract, unpaid overtime under the FLSA, and failure to pay minimum wage under the FLSA [*Id.* ¶¶ 41–64].

5

## II.    Standard of Review

Defendants bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs [(or the pleading party, as the case may be)], accept all well-pled factual allegations as true, and determine whether plaintiffs

6

undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  However, the Court need not accept legal conclusions or unwarranted factual inferences as true.  *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III.    Analysis

### A.    Failure to State FLSA Claim

#### 1.    Parties to Contract

Defendants first assert that all of plaintiff's claims are based upon a services contract between Foothills and MMC Knoxville, not an individual employment contract with plaintiff [Doc. 14, p. 3].  Defendants point to language in the contract stating that it is "by and between Foothills . . . and [plaintiff] (also referred to as MMC Knoxville, Inc.)" and that "Jason R. McDowell (MMC Knoxville, Inc.) agrees to be an Independent Contractor . . . . Wages and compensation will be made payable to the account of MMC Knoxville, Inc. for wages earned by Jason R. McDowell" [*Id*. at 5].  Plaintiff's signature on the contract is, according to defendants, on behalf of MMC Knoxville, and includes the corporate seal of MMC Knoxville[4] [*Id*.].  Defendants contend that plaintiff's employer was MMC Knoxville and MMC Knoxville had a contract to provide services to Foothills, such

---

[4] Defendants deny that the copy of the contract attached to the first amended complaint is a true and accurate copy of the contract, as it does not contain MMC Knoxville's corporate seal, like the true contract bears [Doc. 14, p. 5 n.3].

7

services specifically to be performed by plaintiff [*Id.*]. And, because the FLSA only provides a private cause of action to individual employees, not business entities, even if MMC Knoxville had a breach of contract claim against Foothills, MMC Knoxville's provision of contract services through plaintiff does not permit plaintiff to assert a claim under the FLSA against Foothills [*Id.* at 6].

Plaintiff responds that the plain language of the contract makes clear that it forms an employer-employee relationship with plaintiff, not an independent contractor arrangement with MMC Knoxville [Doc. 18, p. 5]. The contract language defendants cite indicates that the references to MMC Knoxville in the contract are intended to refer to plaintiff individually [*Id.*]. Plaintiff also contends that the contract further states that it is signed by plaintiff "in an individual capacity," not on behalf of MMC Knoxville [*Id.* at 5–6]. Plaintiff argues that the plain language clearly evidences Foothills' intent to employ plaintiff, including language that consistently refers to Foothills "employing" plaintiff and plaintiff providing services for Foothills, as well as the label of the contract: "Employment Contract" [*Id.* at 6].

The FLSA provides a private cause of action to affected "employees." 29 U.S.C. § 216. The FLSA defines an "employee" as "any individual employed by an employer" 29 U.S.C. § 203(e)(1); *see also Dep't of Lab. v. Am. Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 680 (S.D. Ohio 2025) (noting that the FLSA broadly defines an "employee"). The parties appear to contest whether the contract at issue in this case established an employer/employee relationship between Foothills and plaintiff, or whether it established

8

a relationship between Foothills and MMC Knoxville (which both parties appear to concede could not be deemed an "employee" under the FLSA) for provision of services by plaintiff specifically. Accordingly, the Court must look to the terms of the contract to determine the relationship created.

As a preliminary matter, the Court notes that plaintiff attaches a copy of what he alleges is a true and correct copy of the contract to his second amended complaint [Doc. 23 ¶ 13; Doc. 23-1]. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint, and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). There appears to be no dispute that the attached contract is central to the claims in the complaint and that the Court can therefore consider that attached contract.[5]

Moreover, "[w]hen a contract is unambiguous, a court may determine the interpretation on a motion to dismiss as a matter of law, but when a contract is ambiguous, a court should not interpret the contract at the motion to dismiss stage." *Nashville Underground, LLC v. AMCO Ins. Co.*, 523 F. Supp. 3d 1006, 1011 (M.D. Tenn. 2021) (collecting cases). Accordingly, unless the contract *unambiguously* creates a relationship

---

[5] As noted previously, defendants appear to suggest that the attached contract is not a true and correct copy of the finalized contract between the parties [Doc. 14, p. 5 n.3]. But defendants do not present a copy of any other version of the contract. And, at the motion to dismiss stage, the Court must accept as true plaintiff's allegation that the attached version of the contract is a true and correct version. *See generally Bishop*, 520 F.3d at 519 (stating that, at the motion to dismiss stage, the Court must accept all well-pleaded facts as true).

9

between Foothills and MMC Knoxville, rather than an employment relationship between Foothills and plaintiff, the Court must deny defendants' motion to dismiss (at least as to this ground).

The Court does not find that the contract unambiguously creates a relationship between Foothills and MMC Knoxville, rather than Foothills and plaintiff. For starters, the contract is titled "Employment Contract" [Doc. 23-1, p. 1]. The introductory language of the contract states the following:

> This Employment Contract (this "Contract") is made effective as of September 01, 2023, by and between Foothills Brokerage Inc. of 2301 Texas Avenue, Knoxville, Tennessee, 37921 and Jason R. McDowell (also referred to as MMC Knoxville, Inc.) of 11449 Saga Lane, Knoxville, Tennessee, 37931.
>
> 1099 vs. W2: *Jason R. McDowell (MMC Knoxville Inc[.]) agrees to be an Independent Contractor* and agrees to receive a 1099 form documenting wages earned. Wages and compensation will be made payable to the account of MMC Knoxville, Inc. for wages earned by Jason R. McDowell (details below:
>
> Accounting Number: _____
> Routing Number: _____
>
> A. Foothills Brokerage Inc. is engaged in the business of Transportation, Logistics, and Brokerage. Jason R. McDowell will primarily perform the job duties at the following location: 2301 Texas Avenue, Knoxville, Tennessee.
> B. Foothills Brokerage Inc. desires to have the services of Jason R. McDowell.
> C. *Jason R. McDowell is an at will employee of Foothills Brokerage Inc..* [sic]. Either party is able to terminate the employment agreement at any time.

[*Id*. (emphasis added)]. At best, this language from the introductory language is contradictory, indicating both that plaintiff is an "Independent Contractor" and "an at will employee" [*See id*.].

Moving into the body of the contract, Paragraph 1, labeled "EMPLOYMENT," goes

10

on to state that "Foothills Brokerage, Inc. shall *employ* Jason R. McDowell as President of Brokerage Operations" and "Jason R. McDowell accepts and agrees to such *employment*" [*Id*. (emphasis added)]. Paragraph 2 is labeled "BEST EFFORTS OF *EMPLOYEE*" and states that plaintiff will perform to the best of his ability [*Id*. (emphasis added)]. Paragraph 4 is labeled "COMPENSATION OF *EMPLOYEE*" and sets forth the salary that "Foothills Brokerage Inc. will pay Jason R. McDowell" [*Id*. (emphasis added)]. Paragraph 5 contains a subsection regrading "Death of the *Employee*," and sets forth entitlement to commission payments "[i]f Jason R. McDowell dies during the term of this Contract" [*Id*. at 2 (emphasis added)]. Paragraph 9, labeled "CONFIDENTIALITY AFTER TERMINATION OF *EMPLOYMENT*," states that "[t]he confidentiality provision of this Contract shall remain in full force and effect for a period of 180 Days after the voluntary or involuntary termination of *Jason R. McDowell's employment*. During such period, neither party shall make or permit the making of any public announcement or statement of any kind that Jason R. McDowell *was formerly employed by* or connected with Foothills" [*Id*. at 3 (emphasis added)]. Paragraph 10 contains a noncompete agreement "for a period of 180 days following the termination of *Jason R. McDowell's employment*" [*Id*. (emphasis added)]. Moreover, Paragraph 11 states that "*Jason R. McDowell's employment under this Contract shall be for an unspecified term on an 'at will' basis*," and indicates that if plaintiff violates the contract, Foothills "may terminate *employment* without notice" [*Id*. (emphasis added)]. Paragraph 14 sets forth the addresses where notices under the contract shall be delivered, and lists the "Employee" as "Jason R. McDowell (MMC Knoxville, Inc.)" [*Id*. at 4].

11

Paragraph 20 identifies the signatories to the contract and states that it is signed by "Jason R. McDowell (MMC Knoxville, Inc.) *in an individual capacity*" [*Id.* (emphasis added)]. Each of these provisions seems to indicate that the contract was intended to create an employer/employee relationship between Foothills and plaintiff.

Ultimately, beyond the contradictory language in the initial paragraph of the contract, and the inclusion of MMC Knoxville in parenthesis after plaintiff's name on occasion, the contract otherwise appears to have been intended to create an employer/employee relationship between Foothills and plaintiff. At best, the contract is ambiguous as to whether Foothills was employing plaintiff, or whether it was contracting with MMC Knoxville to provide services, with plaintiff as the specified individual provider of services. Therefore, even if the Court were to read the contract in a manner more generous to defendants' argument, the Court would find ambiguity exists, and therefore, dismissal under Rule 12(b)(6) is not warranted on this ground.

### 2.    Exempt Status

The FLSA exempts employers from its minimum wage and overtime requirements if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The parties appear to agree that, at least initially, defendant was an exempt employee within the meaning of this provision [Doc. 23 ¶ 30; Doc. 14, pp. 4, 7–8]. However, the parties dispute whether plaintiff remained an exempt employee during the period of time when defendants allegedly did not pay plaintiff's salary.

12

Defendants argue that alleged breach of the contract by nonpayment of four weeks of annual salary does not eliminate plaintiff's status as an exempt employee or provide a cause of action under the FLSA [Doc. 14, p. 9]. Defendants cite *Donovan v. Agnew*, 712 F.2d 1509, 1517 (1st Cir. 1983) and *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361 (11th Cir. 1997) for the proposition that the FLSA's minimum wage protections do not apply to highly salaried employees when their employment contracts are breached [*Id.* at 10]. Defendants acknowledge that the Sixth Circuit has reversed the dismissal of FLSA claims in *Orton v. Johnny's Lunch Francise, LLC*, 668 F.3d 843 (6th Cir. 2012), but state that the court did recognize that an improper deduction from the employee's pay does not necessarily render the employee non-exempt [*Id.*]. Defendants also argue that *Orton* is factually distinguishable because the plaintiff in *Orton* alleged that he was not paid any amount for five months, while plaintiff here admits that he was paid for all but a period of less than four weeks [*Id.* at 11]. Additionally, defendants argue that the analysis in *Orton* is flawed because the Sixth Circuit failed to (1) recognize that under the requirements of 29 C.F.R. § 541.603, the exemption is only lost if the facts demonstrate that the employer did not intend to pay employees on a salary basis; or (2) consider the congressional purpose of the minimum wage and overtime requirements, namely, "to aid the unprotected, unorganized and lowest paid of the nation's working population" [*Id.* at 11–12]. Defendants also note that the Eleventh Circuit has declined to follow *Orton* [*Id.* at 13 (citing *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1266 (11th Cir. 2016))].

Plaintiff responds that, while Foothills was initially exempt from the overtime

provisions of the FLSA with respect to plaintiff, Foothills lost that exemption when it ceased paying plaintiff on a salary basis [Doc. 18, pp. 8, 10]. Plaintiff contends that *Orton* is "strikingly similar" to the instant case, and the Sixth Circuit there determined that the question was not what the plaintiff was owed under the employment agreement but what compensation the plaintiff actually received [*Id*. at 10].[6] Plaintiff argues that defendants have not met their burden of showing that the reason for the deduction was proper, and the Court must presume at this stage of the litigation that the salary deduction imposed on August 16, 2024, was not for a proper purpose [*Id*.]. Plaintiff also argues that the facts show that Foothills did not intend to pay plaintiff on a salary basis, and therefore, lost any exemption with respect to plaintiff upon making improper deductions [*Id*. at 10–11]. Plaintiff contends that defendants' insistence that employees be improperly classified as independent contractors demonstrates Foothills' intent not to pay employees on a salary basis, but, regardless, defendants lost any exemption with respect to plaintiff upon ceasing payments of his salary on August 16, 2024 [*Id*. at 11].

Defendants reply that their counsel has found no decision of any court that has relied on *Orton* to permit a highly compensated exempt salaried employee to assert that his exempt status automatically converted to nonexempt because he did not receive a couple of paychecks [Doc. 20, p. 2]. Defendants further contest that "there is no evidentiary support" for the allegations that Foothills unilaterally decided to cease payments to

---

[6] In a footnote, plaintiff responds to defendants' criticism of *Orton* by noting that district courts are bound to follow the holding of a prior decision of the Court of Appeals until that binding precedent is expressly overturned [Doc. 18, p. 10 n.3].

14

plaintiff, as plaintiff was the person who controlled the company's ADP submissions for all payroll checks and he was the person who decided to not issue payroll checks to himself during this period [*Id*. at 2–3].

The Court finds that *Orton* is controlling in this case, and, under that precedent, plaintiff has stated a claim that he was no longer an exempt employee when Foothills ceased making his salary payments. Like the allegations in this case, in *Orton*, the defendant initially paid the plaintiff his salary as planned but eventually began having payroll issues. 668 F.3d at 845. In August 2008, the defendant ceased making any payments to the plaintiff, but the plaintiff continued working for the defendant until December 2008. *Id*. The district court granted the defendant's motion to dismiss on the ground that the plaintiff was an exempt salaried employee under the FLSA. *Id*. But the Sixth Circuit reversed. *Id*.

The Sixth Circuit began by noting that exempt status under the FLSA is an affirmative defense, which the employer bears the burden of establishing. *Id*. "[T]he employer satisfies this burden only by providing 'clear and affirmative evidence that the employee meets every requirement of an exemption.'" *Id*. (quoting *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)). To qualify an employee as exempt under the FLSA, a defendant must satisfy three tests: (1) the duties test; (2) the salary-level test, and (3) the salary-basis test. *Id*. at 846 (citing 29 C.F.R. §§ 541.700, 541.600, 541.602). Just as the parties' arguments in this case, *Orton* hinged on the salary-basis test. *See id*.

15

The Sixth Circuit noted that the regulation regarding the salary-basis test was amended in 2004, to state the following:

> An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . . An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.

*Id*. at 847 (quoting 29 C.F.R. § 541.602(a) (2004)).[7] The Sixth Circuit highlighted that the 2004 amendment to this regulation shifted the focus of the inquiry from the terms of the employment agreement and to the actual pay the employee received. *Id*.

The Sixth Circuit also stated that the 2004 amended regulations "clarified the effect of an improper deduction on an employee's status as exempt." *Id*. at 848. The Sixth Circuit summarized as follows:

> An improper deduction alone will not necessarily render an employee non-exempt: "an employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a) (2004). An employer's intent to make improper deductions is demonstrate by "[a]n actual practice of making improper deductions." *Id*. However, "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c).

*Id*. (foonote omitted).

---

[7] Despite other changes to the regulation since *Orton*, this language has remained unchanged. *See* 29 C.F.R. § 541.602(a) (2025).

The Sixth Circuit noted that the district court had relied on the Eleventh Circuit's decision in *Nicholson* and concluded that the defendant's failure to pay plaintiff for several months did not convert plaintiff's job from a salary-based position to an hourly-based position. *Id.* at 848. But the Sixth Circuit found that the district court erred for two reasons. *Id.* First, the district court's decision rested on an outdated rule of law, as the relevant starting point for whether an employee is paid on a salary basis is no longer the terms of the employment agreement, but rather, what compensation the plaintiff actually received. *Id.* Second, the district court failed to place the burden of establishing the exemption on the defendants, instead focusing on the sufficiency of the complaint and the not-yet-created record in the case. *Id.* But it was the defendants' burden, not the plaintiff's, to establish that the reason for the deduction was proper. *Id.* at 849.

Finally, the Sixth Circuit noted that the defendants in *Orton* sought to distinguish between an employee whose pay was partially reduced and one whose pay was reduced entirely. *Id.* The court stated that "[a]t first glance, this argument has some support in pre-2004 case law." *Id.* (citing *Nicholson*, 105 F.3d at 1365, and *Donovan*, 712 F.2d at 1517, among others). However, the Sixth Circuit concluded that "[t]he focus in all of these cases . . . was on the terms of the employment agreement. Therefore, to the extent these cases are at all instructive regarding the new regulations, they support the general principle that the *reasons* for the reductions in pay are dispositive, not the amount." *Id.* at 849–50 (emphasis in original).

Addressing first defendants' criticism of *Orton*, the Court notes that this decision is

17

binding precedent in this circuit, and this Court is therefore bound to follow that precedent. *See United States v. Gleaves*, 654 F. Supp. 3d 646, 650–51 (M.D. Tenn. 2023) ("Absent a clear directive from the Supreme Court, this Court is bound by Sixth Circuit precedent."). Moreover, the Court notes that, to the extent defendants argue that the Sixth Circuit, in *Orton*, failed to recognize that, under 29 C.F.R. § 541.603, the exemption is only lost if the facts demonstrate that the employer did not intend to pay employees on a salary basis [Doc. 14, pp. 11–12], the Sixth Circuit, in fact, recognized this regulation and explicitly quoted the exact language defendants cite. *See Orton*, 668 F.3d at 848. And the Sixth Circuit's ultimate determination in *Orton* was that it was the defendant's burden to establish that it did intend to pay the plaintiff on a salary basis. *See id* at 848–49. Accordingly, the Court does not find that *Orton* overlooked the cited regulation. But, even if it did, the Court would still be bound by that precedent. *See Durham v. Martin*, 388 F. Supp. 3d 919, 934 (M.D. Tenn. 2019) (a "district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district is located until that binding precedent is expressly overruled).

Turning to defendants' attempts to distinguish this case from *Orton*, defendants point out that the plaintiff in *Orton* was not paid for a period of approximately five months, while here, plaintiff alleges non-payment of only approximately four weeks [Doc. 14, p. 11]. But nothing in *Orton* indicates that the length of the alleged non-payment played a role in the Sixth Circuit's analysis or conclusion. And defendants do not explain how this distinction between the facts in *Orton* and the facts in the present case impact the

18

applicability of the analysis in *Orton* to this case. Accordingly, while the Court acknowledges this factual distinction between *Orton* and the instant case, the Court does not find that this distinction is legally significant.

Applying *Orton*, defendants bear the burden of establishing that plaintiff was an exempt employee under the FLSA during the alleged period of non-payment. *See Orton*, 668 F.3d at 845. Defendants correctly note that the Sixth Circuit stated in *Orton* that an improper deduction from an employee's pay does not necessarily render the employee non-exempt [Doc. 14, p. 10]. *Orton*, 668 F.3d at 848. But, in that same paragraph, the Sixth Circuit quotes 29 C.F.R. § 541.603(a), stating that an employer's intent to make improper deductions is demonstrated by an actual practice of making improper deductions. *Orton*, 668 F.3d at 848. And plaintiff here alleges that this occurred—that defendants made improper deductions to his pay by failing to pay him for approximately four weeks of salary [*See* Doc. 23 ¶ 32]. Ultimately, *Orton*'s key holding is that it is the defendant's burden, not the plaintiff's, to establish that a deduction was proper, and therefore, that the employee remains exempt under the FLSA. *Orton*, 668 F.3d at 848–49. But defendants present no argument that the deduction at issue here was proper. Accordingly, they have not, at this stage, met their burden to establish that plaintiff remained exempt under the FLSA during the period of non-payment.

To the extent that defendants rely on *Donovan*, 712 F.2d 1509, and *Nicholson*, 105 F.3d 1361, for the proposition that the FLSA should not apply under these circumstances [Doc. 14, p. 9], the Court first notes that these cases are from outside this circuit, and

19

therefore, not binding. *See Keene Grp. Inc., v. City of Cincinnati*, 998 F.3d 306, 315 (6th Cir. 2021 (stating that "out-of-circuit cases are not binding"). More importantly, the Sixth Circuit explicitly rejected the application of those two cases post-2004. *See Orton*, 668 F.3d at 849–50. And, again, this Court is bound by Sixth Circuit precedent. *See Durham*, 388 F. Supp. 3d at 934.

Defendants also argue that no subsequent cases have applied *Orton* to a highly compensated exempt salaried employee under these circumstances [Doc. 20, p. 2]. But defendants do not point to any case law from this circuit concluding that *Orton* would not apply in such circumstances. The fact that no cases with substantially similar facts has been litigated in this circuit post-*Orton* does not impact *Orton*'s applicability.[8]

Finally, defendants contest whether Foothills unilaterally decided to cease payments to plaintiff, stating that there is "no evidentiary support" for such claim [Doc. 20, pp. 2–3]. But the second amended complaint alleges that the parties "jointly" decided to postpone plaintiff's salary payments due to Foothills' financial constraints, not that Foothills made such a decision "unilaterally" [Doc. 23 ¶ 32]. And, regardless, evidentiary support for allegations in the complaint is not a proper inquiry on a motion to dismiss, in which the Court must accept all well-pled facts as true. *Bishop*, 520 F.3d at 519.

Ultimately, the Court concludes that plaintiff has stated a plausible claim that he became non-exempt under the FLSA based on improper deductions to his pay, and

---

[8] For purposes of the instant assessment of defendants' motion, the Court accepts defendants' statement that no cases post-*Orton* have applied that case in similar circumstances and has not conducted an exhaustive independent review of the cases applying *Orton*.

defendants have not met their burden, at this stage, to show that plaintiff remained exempt under the FLSA. Therefore, dismissal is not warranted on this ground.

### 3. Plausible Claim for Overtime Compensation

Defendants next contend that the amended complaint fails to allege specific facts required to establish a plausible claim for overtime compensation [Doc. 14, p. 4]. Defendants state that the first amended complaint includes allegations of the schedule that plaintiff "regularly worked" and "estimates" of his "typical workday," but such are legal conclusions paraphrasing the statutory language, not allegations of fact sufficient to support an FLSA overtime claim [*Id*. at 15–16]. Moreover, the first amended complaint fails to allege facts from which it could be determined that all the "typical" hours plaintiff claims to have worked in excess of 40 hours a week were for compensable work [*Id*. at 16]. And, according to defendants, plaintiff has not alleged any facts from which it could be determined that Foothills had knowledge that plaintiff was performing compensable overtime work [*Id*.].

Plaintiff responds that the pleading standard defendants cite is not the prevailing law in the Sixth Circuit, and the only Sixth Circuit case defendants cite is not relevant here, as plaintiff performed prolonged, substantive overtime work [Doc. 18, p. 13]. Plaintiff states that the second amended complaint provides that he regularly worked in excess of 40 hours a week without compensation, including specific details about the hours worked and work performed [*Id*.]. Tasks completed during those overtime hours were not "preliminary" or "postliminary," but rather, a substantive continuation of plaintiff's workday, including

21

drafting processes and procedures, meeting and communicating with employees and customers, and performing other material portions of his job [*Id*.]. Plaintiff further contends that defendants cannot claim that the did not know of his after-hours work, as he was often the first in and last out of the office each day and had a key to the office for this purpose [*Id*. at 14]. Additionally, defendants were regularly copied on plaintiff's after-hour communications and also had access to his email logs and remote login activity [*Id*.].

In support of their argument, defendants cite two cases out of the Second Circuit and one case from the Southern District of New York [Doc. 14, pp. 14–15 (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013), *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) and *Hosseini v. Miilkiina LLC*, No. 22-cv-1459, 2023 WL 2136390 (S.D.N.Y. Feb. 21, 2023)). The Second Circuit has concluded that, to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours. *Nakahata*, 723 F.3d at 200 (citing *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). But, in *Nakahata*, the Second Circuit acknowledged that the question of the degree of specificity necessary to state an FLSA overtime claim is "an issue that has divided courts across the country[.]" *Id*.

Unlike the Second Circuit, the Sixth Circuit has not directly addressed FLSA pleading standards. *Gibbs v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2:23-cv-2163, 2022 WL 36688, at *4 (W.D. Tenn. Jan. 3, 2022). Nonetheless, district courts in the Sixth Circuit

have repeatedly declined to adopt the heightened FLSA standards adopted by other circuits. *Id*. (citing *Mabry v. Directv, LLC*, No. 3:14-cv-698, 2015 WL 5554023, at *4 (W.D. Ky. Sept. 21, 2015); *Roberts v. Corrections Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *7 (M.D. Tenn. June 25, 2015); *Pope v. Walgreen Co.*, No. 3:14-cv-439, 2015 WL 471006, at *4 (E.D. Tenn. Feb. 4, 2015)). Indeed, district courts in the Sixth Circuit "have largely 'rejected attempts to tighten the post-*Twombly*/*Iqbal* pleading standard under the FLSA.'" *Simpson v. Baskin*, 2018 WL 1070897, at *7 (M.D. Tenn. Feb. 26, 2018) (quoting *Comer v. Directv, LLC*, No. 2:14-cv-1986, 2016 WL 853027, at *9–10 (S.D. Ohio Mar. 4, 2016)). "In practice, this has meant that district courts in the Sixth Circuit have allowed actions to go forward in which plaintiffs have pleaded . . . unpaid or undercompensated hours worked in an average workweek." *Id*. (citing *Mabry*, 2015 WL 5554023, at *4; *Doucette v. DIRECTV, Inc.*, No. 2:14-cv-2800, 2015 WL 2373271, at *7 (W.D. Tenn. May 18, 2015); *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2014 WL 7180164, at *3 (M.D. Tenn. Dec. 16, 2014)); *see also Gibbs*, 2022 WL 36688, at *4 ("Courts in the Sixth Circuit do not require FLSA overtime complaints to allege the approximate number of overtime hours" and plaintiff "does not have to plead the nature of her overtime work").

Rather, in the Sixth Circuit, "FLSA complaints must contain factual allegations of a claim's prima facie elements." *Gibbs*, 2022 WL 36688, at *2. The elements of a prima facie claim of FLSA overtime violations are: (1) that an employer/employee relationship existed; (2) that the employer or its employees engaged in interstate commerce; (3) that the

23

employee worked more than 40 hours in a workweek; and (4) that overtime was not paid. *Id*. "To satisfy this relatively low bar, an FLSA plaintiff need not allege factual details about his or her work schedule, the specific weeks during which overtime occurred, or the number of overtime hours worked." *Dozier v. Alliance Global Solutions, LLC*, No. 3:24-cv-348, 2024 WL 4445714, at *4 (M.D. Tenn. Oct. 8, 2024). Rather, "extensively detailed factual pleading is not required in the context of an FLSA claim, so long as a defendant is given sufficient notice of the prima facie claim that it is being asked to defend." *Murphy v. Kettering Adventist Healthcare*, No. 3:23-cv-69, 2023 WL 5020504, at *3 (S.D. Ohio Aug. 7, 2023) (internal quotation marks omitted).

In light of this case law from courts in this Circuit, the Court finds that plaintiff's allegations in the second amended complaint about the hours worked are sufficient for purposes of pleading an FLSA overtime claim. Plaintiff alleges that he worked approximately 50 hour per week during the time period of non-payment, which he identifies as a "conservative estimate" of the overtime hours worked [Doc. 23 ¶ 33]. He specifies that he regularly worked in the office from 7:30 a.m. through 5:30 p.m. and rarely took a lunch break [*Id*.]. He also stated that he would work remote hours before going into the office in the morning and after going home in the evening [*Id*.]. He estimates that his typical workday equated to approximately 15 hours of work per day, and that he also worked remotely on weekends [*Id*.]. However, plaintiff states that he cannot verify the specific hours worked because such documentation is in the defendants' sole possession [*Id*.]. This information is sufficient to provide defendants with adequate notice of the

FLSA claim they are being asked to defend. *See Murphy v*, 2023 WL 5020504, at *3.

Defendants do cite one case out of the Sixth Circuit: *Forrester v. American Security and Protection Service, LLC*, No, 1-5870, 2022 WL 1514905 (6th Cir. May 13, 2022) [Doc. 14, pp. 15–16]. In that case, the Sixth Circuit addressed the type of work entitled to overtime compensation under the FLSA, acknowledging that a plaintiff's "complaint must contain facts that show she is entitled to compensation" for the overtime worked. *Forrester*, 2022 WL 1514905, at *1. "After all, the FLSA doesn't require employers to pay for every minute employees are at work." *Id*. While the FLSA does not explain what is compensable, the Portal-to-Portal Act, which amended the FLSA, makes work-related activities that are "preliminary" or "postliminary" to the "principal activity or activities" which the employee is "employed to perform" non-compensable. *Id*. (citing 29 U.S.C. § 254(a)). The Sixth Circuit cited the Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), and concluded that whether an activity is a "principal activity" turns in part on whether the employer could have eliminated the activity in question without impairing the plaintiff's ability to complete his work. *Id*. at *2. The Sixth Circuit, in *Forrester*, concluded that the plaintiff's complaint, which only stated that the overtime was used for "shift-change duties" did not provide sufficient information to answer this question, and therefore, did not state a claim for relief. *Id*.

But, as to the type of work being performed, plaintiff here provided significantly more detail than the plaintiff in *Forrester*. Plaintiff alleges that at least some of his remote work involved responding to emails and working on drafting new processes and procedures

25

for Foothills without interruption [Doc. 23 ¶ 33].  Such allegations appear to at least state a plausible claim for relief.  That is to say, it is at least plausible that plaintiff's work in responding to email and drafting new process and procedures were activities that Foothills could not have eliminated without impairing plaintiff's ability to complete his work for Foothills.  *See Forrester*, 2022 WL 1514905, at *2.

Finally, turning to defendants' arguments regrading Foothills' knowledge of plaintiff's alleged overtime work, "[t]o be liable under the FLSA . . . an employer must possess actual or constructive knowledge of the employee's overtime."  *Monroe v. FTS USA, LLC*, 763 F. Supp. 32d 979, 986 (W.D. Tenn. 2011).   An employer has constructive knowledge of the overtime hours when the employer should have discovered such through the exercise of reasonable diligence.  *Dikker v. 5-Star Team Leasing, LLC*, 243 F. Supp. 3d 844, 852 (W.D. Mich. 2017) (quoting *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 391 (6th Cir. 2016)).  "[A]ccess to records indicating that employees were working overtime . . . is not necessarily sufficient to establish constructive knowledge."  *Id*. at 853 (quoting *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 781–82 (8th Cir. 2009)).  But, "[s]ome cases may lend themselves to a finding that access to records would provide constructive knowledge of unpaid overtime work[.]"  *Craig*, 823 F.3d at 392 (internal quotation marks and alterations omitted).  Thus, such determinations "often hinge on the evidence presented at trial, and therefore should be left to the jury."  *Id*.; *see also Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2019 WL 4345698, at *3 (S.D. Ohio Sept. 12, 2019) (stating that summary judgment in FLSA actual or constructive knowledge unpaid

26

overtime cases is exceeding rare because an employer's knowledge of unpaid work often turns on disputed issues of fact).

Although plaintiff does not specifically allege that defendants were either actually or constructively aware of his overtime work, the Court does not find that such is fatal to his FLSA overtime claim at the motion to dismiss stage. No doubt, plaintiff must prove that defendants had actual or constructive knowledge of his overtime hours worked to succeed on his claim. But an employer's knowledge of the overtime hours worked is not an element of a prima facie FLSA overtime claim, and courts in this Circuit have indicated that a plaintiff need only plead sufficient facts to support a prima facie claim to survive a motion to dismiss. *See Gibbs*, 2022 WL 36688, at *2. Moreover, plaintiff does allege that defendants have the documentation of his overtime work, including his email logs, in their possession [Doc. 23 ¶ 33]. And, while possession of such documentation alone may not be sufficient to establish defendants' knowledge, this allegation, if substantiated, may be sufficient to raise an issue of fact for a jury. *See Craig*, 823 F.3d at 392.

Ultimately, to quote another judge from this district, the Court finds that "[o]n the facts of the present case, and with utmost respect to the appellate courts cited by the defense . . . dismissal of the instant complaint would be overly harsh and inconsistent with the requirements of Rule 8(a), *Iqbal*, and *Twombly*." *Pope*, 2015 WL 471006, at *4 (Phillips, J.) (finding that allegation that plaintiffs "regularly and repeatedly worked far in excess of forty-four (44) hours per week" without overtime pay provided defendant with sufficient notice to form a response). Accordingly, the Court declines to dismiss plaintiff's

FLSA overtime claim on this ground.

### B.    Supplemental Jurisdiction

Defendants contend that plaintiff's breach of contract claim substantially predominates over the FLSA claims, and therefore, under 28 U.S.C. § 1367(c)(2), the Court should decline to exercise supplemental jurisdiction over the breach of contract claim [Doc. 14, p. 18]. Defendants suggest that considerations of judicial economy, convenience, fairness to litigants, and comity support the Court declining supplemental jurisdiction over the remaining state law claim after dismissal of the FLSA claim [*Id*. at 19].

Plaintiff responds that, because his FLSA claims, over which the Court has original jurisdiction, are not subject to dismissal, the Court should exercise supplemental jurisdiction over his breach of contract claim [Doc. 18, pp. 14–15].

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The supplemental jurisdiction statute indicates that district courts may decline to exercise supplemental jurisdiction when: (1) the claim raises a novel or complex issue of state law; (2) the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) the court has dismissed all claims over which is has original jurisdiction; or (4) exceptional circumstances. 28 U.S.C. § 1367(c). Defendants appear to ask the Court to decline supplemental jurisdiction over plaintiff's state law claims under § 1367(c)(2) and (c)(3). But, for all the reasons stated above, the Court does not find it appropriate to dismiss plaintiff's FLSA claims.

28

Therefore, declination of supplemental jurisdiction under § 1367(c)(3) is inapplicable.

As to § 1367(c)(2), the Court does not find that plaintiff's state law breach of contract claim predominates over his FLSA claims. "Although there appears to be no definitive test to determine whether state law predominates over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether the state law claims involve proof that is not needed to establish the federal law claims." *Garrett v. Morgan Cnty. Sheriff's Office*, No. 1:23CV2011, 2025 WL 2371892, at *7 (N.D. Ohio Aug. 14, 2025) (internal quotation marks and alterations omitted). Here, the second amended complaint raises three claims: two under the FLSA and one state law breach of contract claim [Doc. 23, pp. 8–12]. And, as the analysis above has established, these claims are somewhat intertwined and certainly will require overlapping evidence regarding the alleged non-payment, either in violation of the FLSA and/or in breach of the "Employment Contract." Accordingly, the Court finds it appropriate to exercise supplemental jurisdiction over plaintiff's state law breach of contract claim at this time.

## IV. Conclusion

For all these reasons, defendants' motions to dismiss [Docs. 9, 13] are **DENIED**. Defendants' motion to stay discovery pending a ruling on these motions [Doc. 15] is therefore **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE